IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL BARNES,

    Plaintiff,

v.

SENSORMATIC ELECTRONICS LLC,

    Defendant.

CIVIL ACTION FILE NO.

1:16-cv-3121-ODE-CMS

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendant's Motion for Summary Judgment. [Doc. 31]. For the reasons that follow, I **RECOMMEND** that the motion be **GRANTED**.

### I.    PROCEDURAL BACKGROUND

On August 29, 2016, the Court docketed *pro se* Plaintiff Michael Barnes's Complaint in which he alleges that he was discriminated against and retaliated against by Defendant Sensormatic Electronics, LLC, the company to which he was assigned during the relevant time period as a temporary worker through a staffing agency. [Doc. 2, Complaint, at 1-2]. In a letter attached to the Complaint, Plaintiff claims that he was treated unfairly on a number of occasions. [Id. at 10-11]. Plaintiff raises two claims: failure to hire in violation of the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and retaliation in violation of either the ADEA or Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").[1]  [Id. at 1-2, 6].

At the conclusion of discovery, Defendant filed the pending motion for summary judgment, arguing that it is entitled to summary judgment on both of Plaintiff's claims.  Plaintiff filed two responses, and Defendant filed two replies. [Docs. 36-39].  The motion is now fully briefed and ready for resolution.

## II.   FACTS[2]

From May 2013 until September 29, 2014, Plaintiff was an employee of Manpower, a temporary staffing agency, and was assigned to work for Defendant in a warehouse.  [Doc. 31-4, Plaintiff's Deposition ("Pl. Dep."), at 76-77, 115].

---

[1] It is unclear which statute Plaintiff is proceeding under for his retaliation claim.  He checked both the "Title VII" and "ADEA" boxes in his complaint [Doc. 2 at 1-2], and his EEOC intake questionnaire alleges discrimination based on age [Doc. 31-4 at 280].  But he testified in his deposition that he thought all of his claims fell under Title VII. [Pl. Dep. at 15-16].  Based on his allegations, it appears that his claims more properly fall under the ADEA.  In any event, the retaliation framework is the same under both statutes.

[2] These facts are for the purpose of summary judgment only and have been drawn from the competent evidence presented in connection with the summary judgment filings.  In conformity with the instructions from the United States Supreme Court, I have construed the facts in the light most favorable to Plaintiff, the nonmoving party, and have drawn all inferences in Plaintiff's favor. See Board of Education v. Pico, 457 U.S. 853, 863 (1982).

Plaintiff's first position with Defendant was as a box maker. [Id. at 80, 85]. After his first few months of making boxes, he started working in different departments doing a variety of tasks, including making boxes, working in shipping and receiving, and loading and unloading containers. [Id. at 81-84].

Throughout Plaintiff's assignment with Defendant, Plaintiff's supervisors frequently advised Plaintiff that his production was low. [Pl. Dep. at 106-107, 116, 119]. Despite this, at some point between May and July 2013, one of Plaintiff's supervisors recommended that Defendant hire Plaintiff as a permanent employee. [Id. at 101-102]. Thereafter, Defendant hired several Manpower workers as permanent employees, but Plaintiff was not one of them. [Id. at 105]. This is the heart of Plaintiff's case.

In May 2014, Defendant posted four permanent "Material Handler" positions for the Receiving Department, which involved duties similar to what Plaintiff was doing as a temp. [Doc. 31-3, Declaration of Maria Hernandez ("Hernandez Decl."), ¶ 8; Pl. Dep. at 95-97]. Plaintiff testified that he applied for two of the positions with the help of his daughter who completed the online application for him.[3] [Pl. Dep. at 88-89, 114, 128]. Plaintiff testified that he did

---

[3] Defendant denies ever receiving an application from Plaintiff for any position. [Hernandez Dec. ¶ 9]. For purposes of this motion, however, the Court

not receive any response from Defendant or anyone else regarding his application(s), but he knew two or three people who got interviews; he trained those people, and believes that he had significantly more experience than they did. [Id. at 90-91]. It is undisputed that Defendant filled those positions in June 2014 with four individuals who all had higher productivity percentages than Plaintiff in the months leading up to the hiring decision. [Hernandez Decl. ¶¶ 16-17].

Plaintiff does not dispute that he regularly had low productivity. [Pl. Dep. at 121]. Indeed, during the six-month period before he was terminated, Plaintiff rarely met or exceeded Defendant's productivity goal. [Id. at 126-27; Pl. Dep. Ex. 6, Doc. 31-4 at 274-77]. Plaintiff repeatedly asked one of his supervisors, Maria Hernandez, to talk with him about his productivity, but she refused to speak to him about it and would not help him fix the problem. [Pl. Dep. at 121-22]. He testified further that there were reasons why his productivity was low, including problems with the scanners [id. at 118-19, 168-69], the fact that he was training other people [id. at 124], and the fact that sometimes he "had to work under other people's names" because he did not have a log-in [id. at 181].

On May 22, 2014, Maria Hernandez asked Manpower to replace Plaintiff

---

must view the facts in the light most favorable to Plaintiff, the non-movant, who testified that he did apply for two of the positions.

because of his low productivity. [Hernandez Decl. ¶ 23]. She discussed this request with HR, her supervisor, and a Manpower employee, and they decided to wait until later in the year, after the department's busy season was over. [Id. ¶ 24]. Thereafter, Ms. Hernandez continued to request that Manpower replace Plaintiff; she made further requests for his separation in August 2014 and then again in September 2014. [Id. ¶¶ 25, 28].

Plaintiff testified that in September 2014, he attended two meetings with Ms. Hernandez at which all third-shift employees—both employees of Manpower and employees of Defendant—were present. [Pl. Dep. at 129-32, 148-49]. Plaintiff testified that during a meeting on September 19, 2014, he tried to speak with Ms. Hernandez, but she said, "I don't suppose to talk to you people," and then she just walked away. [Id. at 16-17, 97, 121, 130-31, 136, 148-50]. Plaintiff testified that a week later, during a meeting on September 26, 2014, he "brought it up that I felt as though I was being discriminated against." [Id. at 131, 133].

Manpower terminated Plaintiff's assignment on September 29, 2014—three days after the second of the two meetings—for the stated reason of poor performance. [Hernandez Decl. ¶¶ 28, 30-31]. According to Plaintiff, at the time he was separated from Defendant, there were other people who had lower productivity than he did. [Pl. Dep. at 124-25, 163].

Plaintiff filed an EEOC charge on March 9, 2015, alleging (1) that Defendant discriminated against him based on his age when it did not hire him for a permanent position in June 2014; and (2) that Defendant unlawfully terminated him in September 2014 in retaliation for expressing the opinion that he was being discriminated against. [Doc. 31-4 at 278, EEOC Charge]. Plaintiff did not name Manpower in his EEOC Charge, nor did he sue Manpower in this case.

In this lawsuit, Plaintiff raises these same two claims: ADEA discrimination (failure to hire) and retaliation. [Doc. 2 at 1-2]

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant carries its burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325 (1986). "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories,

depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(e). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1563 (11th Cir. 1989). Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## IV.   DISCUSSION

### A. Plaintiff's Failure-to-Hire Claim

Under the ADEA, a plaintiff must exhaust his administrative remedies, beginning with the filing of a charge of discrimination with the appropriate administrative agency, prior to filing a civil action. 29 U.S.C. § 626(d)(1)(A); Bost v. Fed. Express Corp., 372 F.3d 1233, 1238 (11th Cir. 2004). To bring a claim under the ADEA, a charge of discrimination must be filed with the EEOC within 180 days of the alleged unlawful employment practice. 29 U.S.C. § 626(d)(1)(A); see also Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003) ("Because Georgia is a non-deferral state, [the plaintiff is] required to file a Charge of Discrimination within 180 days of the alleged unlawful employment action.").

Any act of alleged discrimination that occurred 180 days before the filing of an EEOC charge is untimely and therefore not actionable.  See Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000) (Title VII).  "If a party fails to comply with the charge-filing requirement, he cannot assert a claim in court." Sheffield v. United Parcel Serv., Inc., 403 F. App'x 452, 454 (11th Cir. 2010) (unpublished) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002)).

      Here, Plaintiff's ADEA claim premised on Defendant's failure to hire him in June 2014 for the Material Handler position(s) has not been administratively exhausted.  Although Plaintiff raised this claim in his EEOC charge, too much time had elapsed between Defendant's hiring decision for those positions and the time Plaintiff filed his EEOC charge on March 9, 2015.  Given the 180-day rule, only those allegedly discriminatory acts that occurred on or after September 11, 2014 (180 days before Plaintiff filed the charge) would be timely for purposes of the ADEA.  Defendant's decision not to hire Plaintiff in June 2014 occurred well outside the 180-day time period. Accordingly, this claim is barred by the 180-day rule, and is therefore subject to dismissal.[4]

---

[4] Plaintiff has not argued, or shown, that there are any circumstances that warrant an equitable modification of the requirement that a charge of

### B. Plaintiff's Retaliation Claim

A prima facie case of retaliation under Title VII and/or the ADEA requires the plaintiff to show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). In its motion for summary judgment, Defendant argues, among other things, that Plaintiff has failed to make out a prima facie case of retaliation because he has not shown that he ever engaged in statutorily protected expression. [Doc. 31-1 at 17-20]. I agree.

To satisfy the "statutorily protected expression" prong of the prima facie case, a plaintiff must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997) (citing Rollins v. State of Fla. Dep't of Law Enf't, 868 F.2d 397, 400 (11th Cir. 1989)). In Little, the Eleventh Circuit described this standard as follows:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that

---

discrimination be filed within 180 days of the alleged unlawful employment practice. See Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 971 (11th Cir. 2016).

his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

Weeks, 291 F.3d at 1312. Here, Plaintiff has failed to make the required showing under either the objective or the subjective standard.

Plaintiff's retaliation claim is based on his assertion that Ms. Hernandez refused to talk to him about his low productivity. [Pl. Dep. at 16, 109-11, 123-24, 134-35, 139]. During his deposition, Plaintiff was asked why he thought Maria Hernandez would not talk to him, and he answered, "I don't know why. But that's why we [are] going to court because I'm going to see why." [Id. at 110]. Plaintiff further testified as follows:

> Q. Do you think [Ms. Hernandez] didn't like you?
>
> A. I don't know what, but -- I don't know what it is. All I wanted [was] to just talk with her.
>
> Q. But when you're -- you said you think she discriminated against you. Based on what did she discriminate against you?
>
> A. Because you got to remember, if you got an issue, the manager is supposed to address my issue. I had an issue with my productivity, and she didn't address it. So that's discrimination right there because she didn't address my issue. It's on the letterhead from Tyco that if I got an issue, an employee, that she's supposed to address that issue. It's on a memo here from

>   Tyco that she was supposed to address my issue. I had an issue with productivity and she didn't address it.

[Pl. Dep. at 123-24]. A few minutes later in his deposition, the following exchange took place:

>   Q. So what was she discriminating against you based on?
>
>   A. Because she wouldn't meet with me. I asked to meet with her. She wouldn't talk with me.
>
>   Q. Was it because you were a temporary worker? Was she discriminating against you because you were a temporary worker?
>
>   A. That's why – that's why I filed a suit to try to find out, ma'am. I don't know why. I don't know why. This is my thing. That's why I filed the suit because my whole thing, I want to know why she didn't never want to speak to me. That's what I'm basing my whole case off of. All I asked [was] to speak with her about my productivity to try to get a permanent job. That's what this whole thing is based all about.
>
>   Q. So you filed this lawsuit to figure out why she wouldn't talk to you?
>
>   A. Why she won't want to talk to me about productivity. ... She fired me about productivity, but yet she didn't want to meet and talk with me about productivity.

[Id. at 134-35].

When asked to explain the basis for his retaliation claim in his Complaint and to identify any unlawful employment practices that he was opposing, Plaintiff testified:

11

> Q. So what practice of your employer did you oppose?
>
> A. Well, let me see. Practice. Well, I know one thing, whatever -- my opposition that I know one thing that -- by the employer, but I felt like I was violated because I couldn't talk or discuss with anybody of the company, and if that's a practice of the company, not to speak with the employee, I felt as though I was discriminated against.

[Id. at 156].

There is competent evidence in the record that at the September 26, 2014 meeting, Plaintiff expressed his view that he was being discriminated against, and he was separated three days later, on September 29, 2014. However, while Plaintiff has produced evidence that he was frustrated by Ms. Hernandez's actions and thought that she was treating him unfairly, he has produced no evidence that he was opposing an unlawful employment practice. Although defense counsel gave Plaintiff several opportunities during his deposition to explain why he thought he was being discriminated against, Plaintiff never testified that he thought Ms. Hernandez would not talk to him due to his age or due to any other protected characteristic. Instead, Plaintiff testified that he believed he was singled out for this treatment because Ms. Hernandez would speak to "everyone else." [Pl. Dep. at 139-40].

While Plaintiff has presented evidence that he was treated differently than his coworkers, he has not shown that this treatment was based on any protected

12

class, such as age or race.  In the absence of evidence that Plaintiff engaged in statutorily protected expression during his placement with Defendant, Plaintiff has failed to make out a prima facie case of retaliation, and Defendant is entitled to summary judgment on this claim.[5]  See Jeronimus v. Polk County Opportunity Council, Inc., 145 F. App'x 319, 326 (11th Cir. 2005) (affirming grant of summary judgment for failure to make out a prima facie case of retaliation where the plaintiff claimed that he had been "singled out" for unfair treatment and had been subjected to a "hostile environment," but never suggested that this treatment was in any way related to his race or sex); Brown v. City of Opelika, 211 F. App'x 862, 864 (11th Cir. 2006) (affirming grant of summary judgment on a retaliation claim where the plaintiff presented no evidence that she engaged in a protected activity by making a complaint about racial discrimination or harassment, and admitted she never mentioned the word "race" when making her complaint).

---

[5] Plaintiff's retaliation claim fails for the additional, independent reason that he has failed to produce any evidence that Defendant's proffered reason for requesting that Manpower end Plaintiff's assignment (i.e., that Plaintiff was a poor performer) is pretext for retaliation.  [Hernandez Decl. ¶¶ 6, 7, 16-17, 21].

## V. CONCLUSION

For the reasons stated, I **RECOMMEND** that Defendant's Motion for Summary Judgment [Doc. 31] be **GRANTED**.

So **REPORTED** and **RECOMMENDED**, this 12th day of December, 2017.

                                                CATHERINE M. SALINAS
                                                United States Magistrate Judge